UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
THOMAS GESUALDI, ANTHONY D'AQUILA,
LOUIS BISIGNANO, MICHAEL O'TOOLE,
BENNY UMBRA, JOSEPH FERRARA, FRANK
FINKEL, MARC HERBST, DENISE
RICHARDSON and THOMAS CORBETT as
Trustees and Fiduciaries of the Local 282 Welfare,      **MEMORANDUM & ORDER**
Pension, Annuity, Job Training, and Vacation and        CV 10-2561 (WDW)
Sick Leave Trust Funds,

                          Plaintiffs,

      -against-

DIVERSIFIED CARTING, INC.,

                          Defendant.
---------------------------------------------------------------X
**WALL, Magistrate Judge:**

Plaintiffs, the Trustees of various employee benefit plans for Local 282 (the "Funds"), commenced this action against defendant Diversified Carting, Inc. ("Diversified") seeking monetary and injunctive relief under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1132 (a)(3) and 1145, and Section 30a of the Labor-Management Relations Act of 1947, 20 U.S.C. §185. This matter is before the undersigned on consent of the parties. *See* Docket Entry ("DE") [42].

## BACKGROUND

The lead case in this consolidated action was commenced on June 4, 2010 by the Funds to recover delinquent fringe benefit contributions and union dues required to be paid pursuant to a series of Collective Bargaining Agreements ("CBA" or "CBAs") between the parties. The CBAs expressly provide that the Employer is bound to the Trust Agreement as well. Under the terms of the Trust Agreement, if an Employer fails to remit required contributions, it is liable for

payment of those contributions in addition to interest, liquidated damages, attorneys' fees and costs. The Employer is further required to submit to periodic audits.

Defendant has appeared in this action. On occasion, the parties indicated that they were close to a settlement in CV 10-2561. *See, e.g.,* Status Report of 4/12/12,DE [17]. After settlement talks stalled before Magistrate Judge Robert M. Levy, who was then the assigned magistrate, discovery proceeded. The matter was reassigned to the undersigned and District Judge Seybert on September 6, 2012 as related to CV 11-5366. The two matters were consolidated into CV 10-2561 on consent of the parties on December 4, 2012. The parties further stipulated to amend the complaint, and an Amended Complaint, the operative pleading, was filed on April 5, 2013. Amended Complaint, DE [30].

According to the Amended Complaint, Diversified is a party to a series of CBAs with Local 282, "most recently the 2011-2015 Demolition, Debris, Asbestos Removal & Toxic Waste Industry Agreement." Am. Compl. ¶9. In its Answer, defendant admitted the allegations set forth in this paragraph. After filing the Amended Complaint, the parties again began discussing settlement. *See* Order of 6/13/13, DE [36]. Discovery continued, however.

On October 4, 2013, plaintiffs filed a 'joint' letter motion that was "reviewed and approved" by defendant's counsel, Ira Sturm. *See* DE [41]. In the letter, the parties state "that the defendant has agreed to concede liability under the collective bargaining agreement, thus the sole issue remaining for trial is the amount of damages due to the Funds pursuant to the collective bargaining agreement, the Trust Agreement, and ERISA." *Id.* A Consent to the undersigned's authority was signed on October 7, 2013. DE [42]. The parties submitted trial briefs, and an inquest was conducted on December 5, 2013. The parties have each submitted

post-hearing proposed findings of fact.

## DISCUSSION

**I. Liability**

At the outset, it is necessary to address the lingering confusion regarding the extent of defendant's concession of liability. The source of this confusion arises from the representations made by defendant's attorney, Ira Sturm. Mr. Sturm consistently states two positions – that defendant concedes liability "on the complaint," *see* Transcript of 12/5/2013 Inquest ("Tr.") at p. 3, and that it concedes liability on *a* collective bargaining agreement effective until June 30, 2011. *Id.* (emphasis supplied). Unfortunately, these statements are themselves inconsistent since the Amended Complaint does not cite to a single CBA, but clearly refers to a "series of CBAs" including most recently the Agreement covering years 2011-2015.

The following exchange, which is a good example of the nature of the confusion, took place at the inquest between the court, defense counsel Sturm and plaintiffs' counsel James Grisi:

> THE COURT: I have to admit, Mr. Sturm, I'm a little confused here. You folks apparently requested an inquest based on the defendant's concession of liability
>
> MR. STURM: Correct, your Honor.
>
> THE COURT: Then you submitted a memorandum prior to the inquest contesting liability and all their claims.
>
> MR. STURM: The question is what periods of time, and within that period of time who do we owe benefits for. So we don't contest the fact that there was a collective bargaining agreement.
> . . .
> We don't contest the fact that there was a collective bargaining agreement that was effective between July 1, 2008 and June 30,

3

|              |                                                                                                                                                                                       |
|--------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | 2011, and that the audit and the claims for that period is what we believe is in dispute.                                                                                           |
| THE COURT:   | Mr. Grisi?                                                                                                                                                                           |
| MR. GRISI:   | Judge, I understood that by not contesting liability that we weren't going to get into those issues, it was just – all we were dealing with today was the amount of damages.         |
| THE COURT:   | Yes. Your letter requesting an inquest with the consent of the defendant conceding liability.                                                                                        |
| MR. GRISI:   | Yes.                                                                                                                                                                                 |
| THE COURT:   | An inquest is held generally if there is a default judgment or a concession of liability. And the only question before the court is the amount of damages.                           |
| MR. GRISI:   | That's all I anticipated putting evidence of before the court today.                                                                                                                 |
| THE COURT:   | Yes.                                                                                                                                                                                 |
| MR. STURM:   | And I anticipated the issue of the liability was on the contract, which was alleged in the complaint. I mean, the complaint only went through to the 2011 period.                    |
| THE COURT:   | But you already conceded that.                                                                                                                                                       |
| MR. STURM:   | I did, and the question is how much, if anything, we owe during that period.                                                                                                         |

Tr. 2-3.

As the plaintiffs currently only seek unpaid contributions for work performed prior to June 30, 2011, I need not decide whether defendant has conceded liability under the CBA that commenced subsequently. Thus I turn to the adequacy of plaintiffs' proof of damages.

## II. Damages

    A. <u>Unpaid Contributions - Audit Reports</u>

Plaintiffs provided several audit reports that show the following:

| Inq. Ex. # | Reporting Period | Unpaid Contrib. Amt. | Report # |
|---|---|---|---|
| 8 | 6/28/07 - 1/4/09 | $8,149.52 | 09-0425-R1 |
| 10 | 1/1/08 - 1/4/09 | $3,180.52 | 10-136-R1 |
| 11 | 1/1/08 - 1/4/09 | $6,481.73 | 10-137-R1 |
| 12 | 1/5/09 - 3/26/12 | $24,391.55 | 11-0098 |
| 14 | 1/5/09 - 3/26/12 | $15,578.54 | 11-0099 |
| 16 | 1/5/09 - 3/26/12 | 8,203.31 | 11-0100 |

The reports are accompanied by spreadsheets setting forth the hours worked and the amounts owed for each fund. The reports were received in evidence by stipulation of the parties. At the inquest, plaintiffs put forth one of the accountants, Kenneth Jones, to discuss how the payroll audits are conducted. I found his testimony to be credible and reliable.

In the post-hearing memorandum, defendant notes that the Funds' claims "are based solely upon the various audit reports and other paperwork." Def's Post-Hrg Brief at ¶8, DE [49]. Diversified also argues that the reports "appear to be for overlapping periods of time, with conflicting claims of underpayments." *Id.* Defendant does not, however, provide even a single example of such a conflict, nor did its counsel ask any questions of plaintiffs' witnesses that would illustrate this alleged problem. As to the overlapping time periods, several of the reports deal with the same time periods because the unpaid contributions arise under different

agreements,[1] a fact of which defendant is readily aware. Absent some specific objections regarding how the auditors prepared the reports, I find no basis to discredit the conclusions of the auditors.

Plaintiffs also submitted three updated reports, 11-0098A, 11-0099A, and 11-0100A, dated November 23, 2013. These reports, prepared by the Funds, show larger amounts of unpaid contributions than the original reports because the Funds essentially reversed credits to Diversified that were reflected in the original report.

| Inq. Ex. # | Reporting Period | Unpaid Contrib. Amt. | Report # |
|---|---|---|---|
| 13 | 1/5/09 - 3/26/12 | $30,264.57 | 11-0098-A1 |
| 15 | 1/5/09 - 3/26/12 | $23,314.46 | 11-0099-A1 |
| 17 | 1/5/09 - 3/26/12 | $9,271.97 | 11-0100-A1 |

The reason for the increase was explained at the inquest by Theresa Cody, senior collections clerk at the Funds. According to the testimony, when the Funds perform an audit and discover a credit due to the employer, the Funds notify the employer of the overpayment and the employer has 120 days to request a credit. The Funds policy provides that the Funds will <u>not</u> refund an overpayment

> [i]f over 120 days have elapsed between the Employer's discovery, whether independently, or though notice from the Fund office, its auditors, attorneys or agents, of the mistake of law or fact that resulted in the Overpayment and the Employer's Request to the Trustees for a Refund

Amended Policy for the Return to Employers of Overpaid Contributions ("Policy for Overpaid

---

[1] If Diversified also engaged in work in the excavating industry during a time period, that work would be covered under the New York City Excavating Agreement or the Nassau/Suffolk Excavating Agreement, depending on where the work was performed.

Contributions"), II. A. (9), Ex. 7. The three audits showing the credit, Nos. 11-0098, 11-0099, and 11-0100, were each dated August 10, 2012. These audits were sent by counsel for plaintiffs to counsel for defendants, along with a demand for payment, on August 22, 2012. *See* Ex. 18.

Cody testified that Diversified never requested the credits set forth in any of the three reports. Tr. 38-41. Defendant does not suggest it did not receive the audits reflecting the credits, and to the extent defense counsel's questioning during cross-examination implies that someone at Diversified verbally requested a credit, defendant provided no witness or other evidence to support that inference.

The Funds' retention of amounts that it essentially admits are overpayments is supported by the Policy on Overpaid Contributions and the testimony. Defendant has not argued that the Policy on Overpaid Contributions does not apply, nor has it presented any evidence to show that it requested a refund. Accordingly, the Funds are entitled to the adjusted amounts.

I find that the Funds are entitled to the unpaid contributions set forth in the following reports:

| Inq. Ex. # | Reporting Period | Unpaid Contrib. Amt. | Report # |
|---|---|---|---|
| 8 | 6/28/07 - 1/4/09 | $8,149.52 | 09-0425-R1 |
| 10 | 1/1/08 - 1/4/09 | $3,180.52 | 10-136-R1 |
| 11 | 1/1/08 - 1/4/09 | $6,481.73 | 10-137-R1 |
| 13 | 1/5/09 - 3/26/12 | $30,264.57 | 11-0098-A1 |
| 15 | 1/5/09 - 3/26/12 | $23,314.46 | 11-0099-A1 |
| 17 | 1/5/09 - 3/26/12 | $9,271.97 | 11-0100-A1 |

Thus the total unpaid contributions established by the audits and payable to plaintiffs is **$80,662.77.**

B. <u>Unpaid Contributions - Self Reported Hours</u>

Both parties reference an amount of $41,482.04 in unpaid contributions from self-reported remittance reports by Diversified for the time period of February 2010 through April 2011. Pls. Post-Hrg Brief at 9; Def. Post-Hrg Brief at ¶16; Ex. 19 & 20. Diversified "concedes (as it has always) that it is liable" in this amount, but wants to be credited by COBRA[2] payments made directly by one of its employees, Thomas J. Bremen, to the Funds. Def. Post-Hrg Brief at ¶18. Cody testified that the health fund has received contributions for Bremen from Bremen himself. Tr. 68. She further testified that when Diversified pays its unpaid contributions and the hours get applied to Bremen, "if he's entitled to a refund he will get one." Tr. 69.

Plaintiffs do not address the potential for a double payment in their post-hearing submissions. Defendant continues to argue that it should be credited in the amount of Bremen's COBRA payments, but again provides no legal support whatsoever for its position. Interestingly, although Diversified acknowledges that the COBRA monies will be reimbursed by the Funds to Bremen only if Diversified pays the contributions, Diversified does not represent that it will take the "credit" amount and refund it directly to Bremen.

Diversified has not established the materiality of the COBRA payments to the amounts it owes. To the extent it insists this is "merely an accounting game," I disagree. Diversified is liable for the amounts it owes pursuant to its agreements with the Funds. Accordingly, the unpaid contributions of **$41,482.04** shall be included in the award.

---

[2]Although the parties never define COBRA, they are referring to the continuation of health coverage under the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §1161.

C. Refund of Excess Payment

The final area of disputed damages currently before me involves the Funds' attempt to recover an overpayment of $297 made to an employee based upon defendants' over-reporting of that employee's hours. *See* Demand Ltr, Ex. 9. Plaintiffs have not cited any legal authority or support in the agreements between the parties suggesting that the Funds must be compensated by the Employer rather than seeking the refund from the Employee enjoying the benefit of the error. Accordingly the $297 overpayment shall not be included in the damages award.

## CONCLUSION

Plaintiffs have established unpaid contributions in the total amount of **$122,144.81**. They shall submit additional documentation regarding interest, liquidated damages, costs and auditors' fees. In addition, they may submit a request for reasonable attorneys' fees, including all documentation necessary to support such a request. These submissions should be filed no later than **September 2, 2014.** Defendant may submit material in opposition to those submissions no later than **September 22, 2014.**

Dated: Central Islip, New York
       July 31, 2014

**SO ORDERED**

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge